IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| KIRK A. PERKINS, | : | |
|---|---|---|
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 1:CV--08-1651 |
| v. | : | |
| | : | (Judge Kane) |
| | : | |
| CHARLES A. STASKIEWICZ, | : | |
| JOHN BROWN and JEFFREY | : | |
| MILLER, | : | |
| Defendant | : | |
| | : | |

**MEMORANDUM**

Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 28.) The motion has been fully briefed and is ripe for disposition. For the reasons discussed below, the motion will be granted, and the case will be dismissed.

**I.     BACKGROUND**[1]

Plaintiff Kirk A. Perkins is a Trooper First Class with the Pennsylvania State Police. (Doc. No. 29 ¶¶ 1-2.) In 2003, Perkins was going through a divorce with his wife, Lorien Mickelson. (Id. ¶ 10.) Prior to the divorce, Mickelson signed a power of attorney giving Plaintiff authority to sell or to refinance the mortgage on their marital residence located at 5977 Eberly Drive. (Id. ¶ 13.) The power of attorney was executed on March 8, 2002, and was set to expire on April 1, 2003. (Id.) With Mickelson's knowledge and approval, Plaintiff altered the power of

---

[1]Consistent with the standard of review on a motion for summary judgment, the facts provided are presented in the light most favorable to Plaintiff. In this case, the facts are almost entirely undisputed. (See Doc. No. 32-2.)

attorney by extending the expiration date to December 31, 2002, and changing the property he was authorized to sell to 2711 Reel Street. (Id. ¶ 17.) Plaintiff submitted the altered document to a settlement company, Renaissance Settlements, in an attempt to sell the couple's property at 2711 Reel Street. (Id.)

Though Mickelson had given Plaintiff permission to make these changes, on December 27, 2004, Mickelson's divorce attorney, Diane Radcliff, wrote a letter to the Dauphin County District Attorney stating that Plaintiff had forged the power of attorney document. (Id. ¶¶ 13, 15.) The letter was forwarded to the PSP. (Id.) Although investigations are not initiated every time an allegation is made against a PSP officer, on December 30, 2004, Officer Mrgich was assigned to investigate the allegations against Plaintiff. (Id. ¶¶ 12-13.) Corporal Kern and Defendant Corporal Charles Staskiewicz also took part in the investigation into Plaintiff's conduct. (Id. ¶ 12.)

As part of the investigation, Defendant Staskiewicz e-mailed Plaintiff to notify him of the allegations against him and to request an interview regarding the allegations. (Id. ¶ 16.) Pursuant to PSP regulation AR 4-25, a PSP officer must first be provided with his *Miranda* rights before being questioned regarding any allegations that could lead to criminal charges. (Id. ¶¶ 19-20.) Plaintiff was informed of his *Miranda* rights, and upon advice of counsel, invoked his right to remain silent, declining to be interviewed about the allegations. (Id. ¶¶ 16, 21.) Though Plaintiff had always maintained that the changes to the power of attorney were known to and had been approved by Mickelson, neither Plaintiff nor his attorney ever provided Defendants any information related to the allegations, including his account of the facts. (Id. ¶¶ 16, 18.)

Defendant Staskiewicz, along with Officers Mrgich and Kern, conducted an investigation without the benefit of Plaintiff's version of the facts. They spoke with Mickelson's attorney who

had provided the initial tip; acquired copies of the modified power of attorney documents; confirmed that the notary public who provided the initial power of attorney had not revised it, extended it, or modified it; interviewed representatives from Renaissance Settlements, the settlement company handling the sale of the Reel Street property; and interviewed Mickelson regarding the allegations. (Id. ¶ 13.) During her interview, Mickelson stated that she authorized the power of attorney only for Plaintiff to refinance the property at 5977 Eberly Drive so that the refinancing could be accomplished while she was deployed to Afghanistan. (Id. ¶¶ 13, 32.) She did not indicate that Plaintiff had altered the official documents with her knowledge or permission.

On September 20, 2005, Staskiewicz gave the final version of the report to Edward M. Marsico, Jr., the District Attorney for Dauphin County, to review and to provide a written prosecutorial decision. (Id.) Pursuant to AR 4-25, no decision to proceeding with criminal charges against a PSP officer may be made without approval from the District Attorney of the county in which the crime allegedly occurred. (Id. ¶ 22.) On January 23, 2006, Staskiewicz received authorization from the First Assistant District Attorney of Dauphin County to charge Plaintiff with forgery, 18 Pa. C.S. § 4101(a), and tampering with records of identification, 18 Pa. C.S. § 4104(a). (Id. ¶ 13, 27.)

Staskiewicz filed the criminal complaint and affidavit of probable cause with Magistrate District Justice Barbara Pianka on February 8, 2006. (Id. ¶ 35.) Prior to that date, Staskiewicz had informed Plaintiff when the filing would take place so that Plaintiff could appear voluntarily and be released on his own recognizance. (Id. ¶ 36.) The following conditions for bail were impressed upon Plaintiff at the time of the preliminary arraignment: he must submit to

fingerprinting and photographing and attend all court dates.² (Doc. No. 32-4 ¶¶ 4, 6-8.) The preliminary hearing was scheduled for February 16, 2006. (Doc. No. 29 ¶ 39.) Plaintiff voluntarily appeared at the preliminary hearing, at which point the forgery charge was withdrawn. (Id. ¶¶ 39, 42.) On September 11, 2006, a bench trial was held on the remaining charge. (Id. ¶¶ 46-48.) At no point was Plaintiff handcuffed, placed in a police vehicle, required to post bail, or detained by law enforcement with respect to any of the charges. (Id. ¶¶ 37, 41.) On September 12, 2006, after a day and a half trial, Plaintiff was acquitted of the tampering charge. (Doc. No. 20 ¶ 28.)

On September 4, 2008, Plaintiff filed this suit against Charles Staskiewicz, who worked on the investigation and filed the initial criminal charges, Lieutenant Colonel John Brown, Deputy Commission of Administration and Professional Responsibility for the PSP, and Jeffrey Miller, Commissioner of the PSP at the time the events giving rise to this action occurred. Defendants have now moved for summary judgment on all counts. The motion is ripe before the

---

²By virtue of a declaration submitted in conjunction with his brief in opposition to Defendants' motion for summary judgment, Plaintiff reveals for the first time that he was required to be fingerprinted and photographed prior to leaving the initial hearing. Though such information does not directly contradict his deposition testimony, it certainly raises new pertinent information that was not revealed at his deposition despite thorough questioning regarding the ways in which his liberty was restricted as a result of the charges. (See Doc. No. 30-2 at 19-22, 29.)

The Third Circuit Court of Appeals has stated that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007). Because the Court concludes that even with the additional facts provided in Plaintiff's declaration there is not a material question of fact regarding Plaintiff's seizure, it need not determine whether Jiminez requires exclusion of the declaration. The Court notes, however, that Plaintiff's declaration does not contain the requisite explanation for his failure to discuss the fingerprinting and photographing as a condition of release at the deposition.

Court for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.

Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. DISCUSSION

#### A. Count I: Section 1983 Malicious Prosecution Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's Fourth Amendment malicious prosecution claim because there was probable cause to arrest and because Plaintiff did not undergo a seizure as defined by court precedent. Defendants also argue that the Fourteenth Amendment malicious prosecution claim was dismissed in the Court's motion to dismiss order and should not be reconsidered. The Court agrees.

Taking up the latter issue first, the Court's March 13, 2009 Order dismissed Plaintiff's Fourteenth Amendment malicious prosecution claim. In that order, the Court held that a malicious prosecution claim brought pursuant to the substantive due process clause cannot lie. See Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998) (" . . . [S]ection 1983 malicious prosecution claims must show more than a substantive due process violation."). While a procedural due process claim, on the other hand, is not categorically barred, Plaintiff fails to allege any facts that could support a procedural due process claim. Accordingly, any and all Fourteenth Amendment due process claims shall be dismissed, and the Court will consider only

the Fourth Amendment malicious prosecution claim against Defendants Staskiewicz and Brown.[3]

To state a claim for Fourth Amendment malicious prosecution in a § 1983 action, a plaintiff must show that "(1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005). Plaintiff must do more than allege the common law tort; he must allege facts sufficient to establish a violation of the Fourth Amendment's prohibition against unreasonable seizures. Mantz v. Chain, 239 F. Supp. 2d 486, 501 (D.N.J. 2002) (plaintiff failed to produce evidence of Fourth Amendment seizure sufficient to support malicious prosecution claim).

The Court finds that Plaintiff's Fourth Amendment malicious prosecution claim must be dismissed because the summary judgment record does not support or raise a question of material fact as to whether Plaintiff suffered a deprivation of liberty consistent with the concept of seizure. The record indicates that Plaintiff was required to submit to fingerprinting and photographing and to attend the court proceedings of a preliminary hearing and a brief trial. These requirements are legally insufficient to constitute a deprivation of liberty as that term is meant in the context of a Fourth Amendment malicious prosecution claim. Plaintiff was not required to post bond money, was not required to routinely contact pretrial services, was not

---

[3] Plaintiff concedes that he has no evidence against Miller to support a malicious prosecution claim. (Doc. No. 32 at 3.)

subjected to travel restrictions, was not placed in custody, and was not deprived of his license.

In DiBella, the Third Circuit Court of Appeals ruled that where the plaintiffs were free to travel, never posted bail, were never arrested, and were constrained only in that they were required to attend court proceedings, they did not suffer a deprivation of liberty sufficient to support a Fourth Amendment malicious prosecution claim. DiBella, 407 F.3d at 602-03. By contrast, in Gallo, the Third Circuit Court of Appeals found that the four requirements of a weekly pretrial services check-in, a $10,000 bail posting, a restriction on out-of-state travel, and mandatory attendance at court proceedings combined to deprive the plaintiff of his liberty sufficient to constitute a seizure, though it was admittedly a "close question." Gallo, 161 F.3d at 222. Many courts within this district have had the opportunity to compare the findings in DiBella and Gallo, and have determined that, absent physical detainment, travel restrictions, bail posting, and mandatory pretrial services check-ins, a Fourth Amendment seizure does not occur. See, e.g., Hanks v. County of Delaware, 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) ("Mere attendance at a trial or a hearing does not qualify as a Fourth Amendment seizure."); Ankele v. Hambrick, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003) ("[The plaintiff] was never incarcerated, restricted to a geographic area, compelled to contact pre-trial services, or deprived of his driver's license. . . . Accordingly, these restrictions do not amount to a seizure for purposes of the Fourth Amendment."); Bristow v. Clevenger, 80 F. Supp. 2d 421, 430 (M.D. Pa. 2000) (no seizure where plaintiff was only "processed for a criminal record by being fingerprinted and photographed . . . she attended a pretrial conference, and she attended a judicial proceeding").

Looking at the totality of the restrictions placed on Plaintiff, including the fingerprinting and photographing, the restraints incurred by Plaintiff were slight in comparison to those placed

upon the plaintiff in Gallo, which itself was deemed a close question. Plaintiff incurred only one of the four Gallo restrictions. Most notably, Plaintiff was at all times free of travel restrictions, which was the most strongly-weighted factor in the Gallo decision. Additionally, Plaintiff did not have to report to pretrial services at any time, let alone on a weekly basis for a period of eight months, as did the plaintiff in Gallo. Last, the Court emphasizes that Plaintiff did not post any money for bail and was never arrested or physically detained, though he was subjected to processing. When these facts are applied to case law, it is clear that the slight restrictions imposed upon Plaintiff's liberty are much more akin to those imposed upon the plaintiffs in DiBella, and are far less than those incurred by the plaintiff in Gallo. Accordingly, the Court finds that, as a matter of law, Plaintiff did not suffer a deprivation of liberty consistent with the concept of seizure as a result of the forgery and tampering charges brought against him. Plaintiff's malicious prosecution claims will be dismissed.

### B. Count II: State Law Malicious Prosecution and Abuse of Process Claims

In Count II of the complaint, Plaintiff alleges that Defendants' conduct constituted malicious prosecution and abuse of process under Pennsylvania law. In resolving Defendants' earlier motion to dismiss these claims, the Court held that Defendants Miller and Brown were entitled to sovereign immunity, and also that Plaintiff had failed to plead sufficient facts for his abuse of process claim. Because Plaintiff amended his complaint to include more allegations of conduct by Miller and Brown, as well as conduct relevant to the abuse of process claim, the Court will reconsider both claims as against all Defendants.

To prevail on a claim for abuse of process under Pennsylvania law, a plaintiff must state that the defendant "employs it for some unlawful object, not the purpose which it is intended by

9

the law to effect; in other words, a perversion of it." McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987). An abuse of process claim will be successful if the plaintiff shows that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." Sabella v. Estate of Milides, 992 A.2d 180, 188 (Pa. Super. Ct. 2010); McGee, 535 A.2d at 1023. To prevail on a claim for malicious prosecution, more commonly dubbed "wrongful use of civil proceedings" under Pennsylvania law, a plaintiff must provide evidence to establish that "1) the underlying proceedings were terminated in [his] favor; 2) defendants caused those proceedings to be instituted against plaintiff[] without probable cause; and 3) the proceedings were instituted primarily for an improper cause." Sabella, 992 A.2d at 188. Abuse of process claims are distinguishable from malicious use of civil process claims in that abuse of process claims are concerned with perversion of the legal process *after it has been issued*, whereas malicious use of civil process claims have to do with the wrongful *initiation* of such process. Id. (emphasis added).

Taking all inferences in the light most favorable to Plaintiff, there are no facts from which a reasonable jury could conclude that any Defendant used the proceedings, either prior to or after their initiation, as a means to procure anything other than a conviction against Plaintiff. In an attempt to support his claim, Plaintiff asserts that his ex-wife, Mickelson, and her attorney, Radcliff, threatened him with criminal charges to obtain a more favorable divorce settlement. Though he supports this assertion with letters sent by Radcliff regarding the divorce settlement, Plaintiff does not successfully impart Radcliff and Mickelson's improper motive onto the actual Defendants in this case.

10

Plaintiff acknowledged in his deposition that he did not inform Defendants of the letters in which Radcliff implied she would bring criminal charges if he did not agree to the divorce settlement. (Doc. No. 30-3 ¶¶ 6, 21; Doc. No. 30-2 at 25-26, 30-31. ) Plaintiff admitted that Defendants attempted to contact him to hear his version of the facts but that he declined to comment. Plaintiff further admitted that he had no evidence to suggest Defendants shared, or even knew about, Radcliff and Mickelson's improper motive. (Id.) At best, then, Plaintiff's argument is that Defendant Staskiewicz's investigation was incomplete, if not lazy. Yet, even accepting Plaintiff's assertion that the investigation was less thorough than it should have been, summary judgment must be awarded to Defendants because negligence is not tantamount to an improper purpose. Plaintiff has not provided a scintilla of evidence to suggest that any Defendant initiated or used the criminal charges against Plaintiff to aid his ex-wife's divorce settlement or to support any other aim. Because an improper motive is an element to both state law claims, Plaintiff's abuse of process and malicious use of civil process claims will be dismissed as against all Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Defendants are entitled to judgment as a matter of law on all claims. Defendants' motion to dismiss will be granted in its entirety, and judgment will be granted in their favor.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIRK A. PERKINS,<br>    Plaintiff<br><br>    v.<br><br>CHARLES A. STASKIEWICZ,<br>JOHN BROWN and JEFFREY<br>MILLER,<br>    Defendant | :<br>:<br>:   CIVIL ACTION NO. 1:CV--08-1651<br>:<br>:   (Judge Kane)<br>:<br>:<br>:<br>:<br>:<br>: |

## **ORDER**

**AND NOW,** this 17th day of June 2010, upon consideration of Defendants' motion for summary judgment (Doc. No. 28) **IT IS HEREBY ORDERED THAT** the motion is **GRANTED.** The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

                                                               __s/ Yvette Kane_____
                                                               Chief Judge Yvette Kane
                                                               United State District Court
                                                               Middle District of Pennsylvania